Whit M. Cook, II, Baton Rouge, La., for debtor/respondent.

Eugene R. Preaus, New Orleans, La., for creditor/movant.

**In re ENERGY CONTRACTORS, INC.**

**Bankruptcy No. 84–00427.**

United States Bankruptcy Court,
M.D. Louisiana.

Dec. 14, 1984.

WESLEY W. STEEN, Bankruptcy Judge.

### REASONS FOR JUDGMENT

Mercantile Texas Credit Corporation ("Mercantile") filed this motion for relief from the stay, asserting an assignment of the Debtor's pre-petition accounts receivable. The Court has determined to deny the motion for relief from the stay on the grounds that Mercantile's security interest is invalid and not effective against third parties under Louisiana law. The assignment of accounts receivable is invalid because Mercantile failed to file a proper Statement of Assignment of Accounts Receivable as required by La.R.S. 9:3103.

## I. Facts

A. Energy Contractors, Inc. ("Energy Contractors") was incorporated June 11, 1981; it was, and is, domiciled in East Baton Rouge Parish, Louisiana.

B. On August 12, 1981, Energy Contractors entered into a loan and security agreement with Mercantile Texas Credit Corporation. The loan and security agreement has an accounts rider that supplements the agreement with respect to accounts receivable. The accounts rider, however, appears to be more in the nature of the loan commitment between Mercantile and Energy Contractors in which Mercantile establishes its obligation (albeit almost precatory in nature) to fund loans to Energy Contractors. The loan and security agreement provides, in pertinent part, as follows:

> "... Borrower hereby grants to Lender a security interest in and to all of Borrower's ... existing and future Accounts ... whether Accounts are acceptable or unacceptable to Lender and whether Accounts are scheduled to Lender ... or not ... and all proceeds and product of and accessions to ... the foregoing ..."

The address of the Borrower in paragraph 2.3 of the loan and security agreement is stated to be 4939 Jamestown Avenue, Baton Rouge, Louisiana. It is unclear, however, from the loan and security agreement whether the designation of an address in Baton Rouge, Louisiana, is intended as a designation of a "place of business" (the significance of which will be explained later) or whether the designation of that address has some other purpose, such as an address for a notice under the contract, an address for maintenance of records and allowance of the Lender's inspection of those records, or merely a warranty by the Borrower. The specific wording of the contract appears to contemplate that the designation of the address is more intended as a warranty by the Borrower than as a designation of a "place of business" under the definition of La.R.S. 9:3101(6).

C. A Statement of Assignment of Accounts Receivable dated March 15, 1983, was recorded on April 4, 1983, in East Baton Rouge Parish. In this statement, Energy Contractors' place of business is given as 4939 Jamestown Avenue, Baton Rouge, Louisiana.

D. A Statement of Assignment of Accounts Receivable dated August 4, 1983, was recorded in St. Landry Parish on August 11, 1983. In this statement, Energy Contractors' place of business is given as 137 East Park, Eunice, Louisiana.

E. On September 29, 1983, by an addendum to the loan and security agreement and accounts rider, the address of Energy Contractors was changed to 137 East Park, Eunice, St. Landry Parish, Louisiana.

F. No Statement of Assignment was ever recorded in East Baton Rouge Parish (Energy Contractors' domicile) listing Eunice, Louisiana, as its place of business.

G. According to David Boyd, Assistant Vice President of Mercantile, the pre-petition debt of Energy Contractors to Mercantile was $435,900.14 (including both principal and interest) plus $204.68 per diem. According to Calvin Smith, testifying for the Debtor, the amount was $419,295.15 principal as of the date of filing; Mr. Smith did not have a figure for accrued interest. Therefore, the Court concludes that the figure of $435,900.14 is the correct amount due as of the date of filing according to the testimony of David Boyd.

H. It appears that the total accounts receivable alleged by Mercantile as pledged to secure its debt have a face value of $540,912.86. According to expert testimony, the collectibility of those accounts is as follows:

| Status of Collectibility | Approximate Amount |
|---|---|
| Questionable | $137,000 |
| Worthless | $179,000 |
| Good | $145,000 |

## II. Law and Application of Law to Facts

The difficulty in this case arises because Mercantile attempted to use a Uniform

Commercial Code form to effect an assignment of accounts receivable under Louisiana law. The form apparently was not designed with Louisiana law in mind, and that fact causes great difficulties. The difficulties are compounded because the Louisiana assignment of accounts receivable law is insufficiently clear and specific. The combination of using the wrong form with an ambiguous law makes the judicial role difficult indeed.

The Louisiana Assignment of Accounts Receivable Law was amended in 1983, effective August 30, 1983, by Act 319 of the 1983 Legislature. Revised Statutes 9:3110 as enacted in the new statute provides that an assignor or an assignee of accounts receivable "... made or perfected prior to the effective date of this part may elect to come under the provisions of this part by filing a notice of assignment and by otherwise complying with this part." No evidence was presented at trial to indicate that any action was taken to elect to come under the provisions of the new statute. Therefore, all references in this opinion will be to the statute as it existed prior to August 30, 1983, but, as will be shown by references in the opinion, it appears that the result would not be different under the new statute.

Mercantile contends that it has a *general* assignment of accounts receivable existing as of August 12, 1981, and arising subsequent to that date. R.S. 9:3102 provided that a general assignment of accounts receivable would be valid between the parties and against third parties with respect to existing accounts as well as with respect to accounts arising in the future provided two requirements were met: First, the parties must somehow evidence the assignment in one of the three ways specified in 9:3105;[1] second, the assignor or the assignee must record a Statement of Assignment of Accounts Receivable in the parish of the assignor's domicile.[2] Before looking at those

requirements, however, one must first consider two important definitions: "place of business" and "general assignment."

Revised Statutes 9:3101(6) defines "place of business" as the "... location ... of the particular establishment ... at or from which accounts receivable are either contracted with debtors or recorded on account records of assignor, or at which it is contemplated that such accounts will be contracted or recorded."

Revised Statutes 9:3101(7) defines "general assignment" to mean the assignment of existing and future accounts "... arising out of *specified operations* conducted by the assignor *at a place of business ...*" [Emphasis supplied.]

It is generally conceded by the parties that Jamestown Avenue in Baton Rouge, Louisiana, was the registered office of the corporation, but its principal place of business and the place from which business operations were conducted was in Eunice, Louisiana. While there appears to be little dispute between the parties with respect to this issue, it is also supported by the evidence. First, on August 11, 1983, the parties executed Exhibit H, a Statement of Assignment of accounts receivable that was later recorded in St. Landry Parish; this listed Eunice as the place of business of Energy Contractors. Second, Exhibit C (Amendment 2 to the loan and security agreement) amends paragraph 2.3 of the agreement as of September 23, 1983, to state the place of business of the company to be Eunice, Louisiana. Third, Exhibit M is a stack of invoices covering the period roughly from November, 1983, through June, 1984. These all clearly show the address of the business as Eunice, Louisiana, and show payments being made to Dallas, Texas (presumably to Mercantile directly). Accordingly, it appears that "place of business" for purposes of the

---

**1.** The three ways are: (i) by writing or stamping upon the ledger sheets; (ii) by separate written agreements signed by the assignor; or (iii) by programming the assignor's computer to note the required information on the computer print-

out sheets. Mercantile and Energy Contractors chose the second method.

**2.** La.R.S. 9:3103.

assignment of accounts receivable was Eunice, Louisiana.

These definitions and facts being established, the Assignment of Accounts Receivable Law can be applied as follows: First, the statute defines a general assignment of accounts receivable as being an assignment of *specified* operations at *a* place of business.[3] Second, it requires that the statement of accounts receivable specify the place of business.[4] The documentation in this case is fatally insufficient in both areas, but particularly in the latter. We will discuss them, however, in the order stated.

The Louisiana Statement of Accounts Receivable Law provides that a general assignment is an assignment of receivables from *specified* operations at *a* place of business. The documentation in this case does not specify *any* business operations. Nor does it contain a statement to the effect that account receivables from *all* businesses are assigned. The documenta-

tion merely states that all of the debtor's "accounts" are assigned.[5]

If the parties to a contract intend that all of a debtor's accounts receivable are to be assigned, it might seem superfluous to require the debtor to specify the business operations from which the accounts are generated. Nevertheless, the statute states that a general assignment means an assignment of *specified* operations at *a* place of business.[6] The statute nowhere explains the significance of using the word "specified" nor of using the word "a" place of business. Since the requirement of specified operations is in the statute, and since this is a statute granting a lien, it must be narrowly construed, and the person asserting the lien must comply technically with the statute. By using a foreign form, Mercantile apparently failed to specify the operations and the place of business and thus, apparently has not met the definition of a "general assignment" as that term is defined in 9:3101(7).[7]

---

**3.** La.R.S. 9:3101(7).

**4.** La.R.S. 9:3103.

**5.** One of the Memoranda of Authorities with respect to this issue argued that the use of the term "accounts" as opposed to "accounts receivable" was a fatal deficiency. The Court disagrees. La.R.S. 9:3101(1) provides as follows:
"(1) 'Accounts receivable' or 'accounts' means and includes any ..."
Thus, it is clear for purposes of the statute that the term "accounts" and the term "accounts receivable" are equivalent. Since the term is statutorily defined, the Court does not find that to be a defect in the documentation.

**6.** The Court can conceive of at least one reason for requiring specified operations. Revised Statutes 9:3105 allows an assignor to assign accounts receivable merely by executing a document with the assignee. This document is the only evidence of which accounts are assigned and which are not, because if the assignor elects to use this method of assigning accounts receivable, the ledger sheets are not marked nor are the accounts identified in any other way. Since it is possible for the debtor to be in several kinds of businesses, and since the accounts receivable can extend to all amounts due for sales of goods or performance of services (except tort obligations and negotiable instruments) the requirement that the operations giving rise to assigned receivables be specified is a reasonable one under the circumstances. An example of the utility of this specification actually arises in

the instant case. Energy contractors apparently was in the business of constructing plank roads and doing other construction work for oil exploration. Some of the accounts that Mercantile claims to have assigned were not for construction work, however, but were on account of the sale of lumber. It is not possible from the documentation provided by Mercantile to determine whether for assignment purposes "accounts receivable" means debts arising from the performance of oil field service operations or whether it also extends to debts related to the sale of lumber. The accounts receivable statute would apparently allow the assignor to assign both kinds of accounts simultaneously. However, it requires that the operations be "specified" in the assignment document and appears to require a specification of the place of business as well, although the language of the statute is very difficult to interpret in that regard.

**7.** Paragraph 2.3 of the loan agreement appears to specify a place of business, but it cannot be argued that "operations" are specified in that paragraph. A second problem with paragraph 2.3 is that the address specified is not the proper address; the Baton Rouge address is specified when, in fact, it appears that all operations were conducted from Eunice; this defect was remedied in September, 1983. Third, paragraph 2.3 does not appear by the parties to be intended to meet the requirements of Revised Statutes 9:3101(7). Rather, paragraph 2.3 appears to be intended as an address at which notices to the

An even more serious problem arises, however, with respect to the Statement of Assignment in this case. The statute requires the recordation of a Statement of Assignment of accounts receivable in the parish of the assignor's domicile. The statute has three requirements for the statement of assignment: "(i) the address of the principal place of business of the assignee; (ii) the address of the place or places of business or occupation of the assignor; and (iii) a statement that the assignor has assigned or will assign accounts receivable or that the assignor has made or will make a general assignment of all of its accounts receivable ..." The statement of accounts receivable that was recorded appears fatally defective both with respect to the second and to the third requirement.

With respect to the second requirement (the address of the principal place of business of the assignor), the Statement of Assignment of accounts receivable is defective because the statement of assignment that was recorded in East Baton Rouge Parish (introduced at trial both as Exhibit G and as Exhibit N) shows the place of business of the assignor as Jamestown Avenue, Baton Rouge, Louisiana. Nevertheless, it appears at trial that the place of business from which the accounts were actually generated (and the records kept) was Eunice, Louisiana. A second Statement of Assignment was executed in August, 1983; this second statement has the correct place of business for the assignor, but was recorded in the wrong parish.[8] Thus, although Mercantile recorded two Statements of Assignment of Accounts Receivable, both were fatally defective: the one recorded in the proper domicile listed the wrong place of business, and the one that listed the correct place of business was recorded in the wrong parish. Because Mercantile never recorded a correct statement of accounts receivable in the correct parish, it did not comply with the notice requirements of 9:3103.

■ In summary, the assignment was not effective because it failed to specify the operations from which receivables were assigned, because it failed adequately to specify the place of business from which the operations were conducted, and because the correct statement was recorded in the wrong place. One of the memoranda of authorities argues, in addition, that the Statement of Assignment of Accounts Receivable is defective because it fails to state that the assignment is a general assignment as opposed to a special assignment. The question is a very difficult one.

The Statement of Assignment of Accounts Receivable recorded by Mercantile states "Energy Contractors, Inc. *has assigned and intends to continue to assign accounts receivables ...*" [Emphasis supplied.] The statute provides two alternative forms for the Statement of Assignment of accounts receivable. One alternative is the phraseology used by Mercantile and Energy Contractors; the alternative statutory phraseology is "_____ has made or will make a general assignment of accounts receivable ..." Counsel argues that failure to announce in the Statement of Assignment that the assignment is a "general assignment" makes the Statement of Assignment fatally defective. Counsel for Mercantile responds with two argu-

debtor can be delivered and also appears to be a warranty by the debtor that he will not remove property and records from that location; in short, it appears that 2.3 was not intended by the parties as a specification of the operations and place of business from which the accounts would be generated, but rather is intended by the parties as a warranty by the assignor of where his place of business and records would be located. By way of example, this form apparently intends that one address will be specified, notwithstanding the fact that the debtor might have several places of business; the statute, on the other hand, would require that each place of business from which accounts would be generated would be individually specified.

8. That statement of accounts receivable was recorded in St. Landry Parish, but the R.S. 9:3103 clearly requires that the statement be assigned in the parish of the assignor's domicile, which in this case was East Baton Rouge Parish, not in the parish where the place of business is located. The new statute effective August 30, 1983, contains the same requirement in R.S. 9:3103(B)(1).

ments: (i) first, that the Statement of Assignment is only intended to provide the function of notice to third parties that lien interests are created; counsel argues that the language used was sufficient for this purpose; (ii) second, counsel argues that the statute only requires that the form of the Statement of Assignment of accounts receivable be "substantially" as stated in the statute.

With respect to his first argument, counsel for Mercantile is correct. In *Agrico Chemical Co. vs. E.K. Painting, Inc.* 432 So.2d 253 (La.1983), the Supreme Court states "the purpose of requiring recordation of the Statement of Assignment is to provide notice that accounts receivable have been or will be assigned." 432 So.2d 253, 255. Counsel for Mercantile is also quite correct that the statement only need be *substantially* the same as the form contained in the statute.

■ The Court is troubled, however, by the specific language of 9:3103. That section of the statute makes three requirements of the Statement of Assignment of accounts receivable, two of which relate to the address of the parties; the third requirement is in the alternative and states that the Statement of Assignment of accounts receivable must announce "... that the assignor has assigned or will assign accounts receivable, *or that* the assignor has made or will make a general assignment of all of its accounts receivable ..." [Emphasis supplied.] The statute, therefore, seems to require that the statement announce either that a specific assignment has been made or that a general assignment has been made. The form used by Mercantile appears to be appropriate for a specific assignment. A third party reading the form would probably conclude that a specific assignment has been made.[9] While this deficiency might not of itself be sufficient to invalidate the assignment of ac-

counts receivable, in combination with the incorrect address specified in the notice recorded in East Baton Rouge Parish such a misstatement might be sufficient to mislead third parties in such a way as to vitiate the effect of notice.

The Court believes that the preceding analysis disposes of the issues involved. For completeness, however, in case of appeal, the Court makes the following conclusions with respect to other issues raised by the parties.

In the brief filed on behalf of Garland Badeaux, Inc., the following issues were raised:

(1) The assertion that Mercantile's documentation is defective because it refers to "accounts" rather than to "accounts receivable." This assertion is not significant because of the definition of "accounts" in R.S. 9:3101(1) as discussed in footnote 5 above.

(2) The argument that Section 552(B) of the Bankruptcy Code provides that a security agreement applies to proceeds of accounts receivable only if the security agreement says so and only if allowed under a non-bankruptcy law. The Court concludes that this agreement does purport to extend to proceeds; the relevant language is cited in the first paragraphs of this opinion. It is believed that Louisiana law permits the assignment to extend to proceeds of receivables. Moreover, counsel misinterprets the issue. He argues that while Mercantile might have had an assignment of the account receivable at the moment of bankruptcy, it would have that security interest only so long as the right remained an account receivable; once it was collected, Mr. Richard takes the position that the security interest terminates. This argument is not valid for two reasons: First,

---

**9.** The August 30, 1983, amendment to the law would change this substantially. First, the Statement of Assignment is now called a "Notice of Assignment." The form is substantially different, and the language referred to in the full text has been omitted.

such an argument would be contrary to Section 552(A) of the Bankruptcy Code, which specifically recognizes security interests to continue after bankruptcy if they were properly perfected before; second, Mercantile is seeking relief from the stay under which it would collect the receivables, and the proceeds would be payable directly to Mercantile.

(3) Counsel argues that invoices 456, 524, 525, and 515 were not assigned since they related to the sale of lumber. He argues that since the lumber was not pledged, then the account receivable was not pledged. This is a complete misinterpretation of Section 552(B) of the Code. Section 552 would not require that the underlying asset be pledged. Section 552 refers, in relevant part here, to the pledge of the receivable and to the amounts collected from the receivable, not to the underlying asset or service that was sold.

The brief for Nezat Industrial Lumber Sales makes the following point that should be answered:

(1) It argues that the assignment is special and not general. This argument is basically on the grounds that Mercantile only advanced funds equal to 80% of Energy Contractor's "acceptable" accounts receivable. This argument is not valid. The documentation clearly contemplates a general assignment of accounts receivable, whether the accounts were "acceptable" or "unacceptable". The acceptability of the accounts related only to the amount that Mercantile would fund and did not relate to the security Mercantile required.

For reasons assigned, the Court will enter an order denying Mercantile's security interests in the accounts receivable and denying its motion for adequate protection or relief from the stay. Counsel for the debtor will submit the appropriate order.