791 F.2d 1222
 In re ENERGY CONTRACTORS, INC., Debtor.
M CREDIT CORPORATION (Formerly Mercantile Texas Credit
Corporation), Movant- Appellant,
v.
ENERGY CONTRACTORS INC., Garland Badeaux, Inc., Nezat
Industrial Lumber Sales, Inc., and United States
Fidelity & Guaranty Co., Respondents-Appellees.
 No. 85-3474.
 United States Court of Appeals,
Fifth Circuit.
 June 13, 1986.
 
 Lawrence R. Anderson, Rex D. Rainach, Baton Rouge, La., for movant-appellant.
 Paul J. McMahon, III, H. Bruce Shreves, New Orleans, La., for U.S. Fidelity & Guar. Co.
 James R. Austin, Boolus J. Boohaker, Baton Rouge, La., for Donald P. Starns.
 Appeal from the United States District Court for the Middle District of Louisiana.
 Before WISDOM, RUBIN and HIGGINBOTHAM, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 A creditor appeals a bankruptcy court decision invalidating its purported security interest in the debtor's accounts receivable for the lender's failure to comply with the Louisiana Assignment of Accounts Receivable Act.[1] Because we conclude that the lender substantially complied with the Act, we reverse the bankruptcy court and uphold the lender's privilege.
 
 I.
 
 2
 Energy Contractors, Inc. (Energy) is a Louisiana corporation in the business of oil field construction. Between January 1983 and March 1984, Energy executed several promissory notes in favor of Mercantile Texas Credit Corporation (now M Credit Corporation). Energy secured its obligation with a Loan and Security Agreement, executed in August 1981, pledging Energy's existing and future accounts receivable. The parties also confected a Statement of Assignment, which they recorded in April 1983 in the conveyance records of East Baton Rouge Parish, Energy's domicile. Another Statement of Assignment was subsequently recorded in August 1983 in St. Landry Parish, the parish in which Energy's principal place of business was by then located.
 
 
 3
 Energy filed a petition for relief under Chapter 11 of the Bankruptcy Code[2] in June 1984. At that time, its indebtedness to M Credit exceeded $400,000. M Credit filed a motion in the proceeding seeking modification of the automatic stay[3] to permit it to collect Energy's outstanding accounts receivable and apply any collected proceeds to satisfy Energy's debt to it. After a hearing, the bankruptcy court disallowed M Credit's security interest on several grounds.[4] (1) The Loan and Security Agreement did not comply with the Louisiana Assignment of Accounts Receivable Act because it did not specify the operations of Energy from which the accounts were to be assigned or list Energy's proper place of business; (2) the Statement of Assignment did not provide the kind of notice required by the Act because it did not indicate the nature of the intended assignment (whether general or specific); and, (3) the statement filed in East Baton Rouge Parish did not list Energy's actual place of business. The district court affirmed.
 
 II.
 
 4
 The Louisiana Assignment of Accounts Receivable Act has been amended twice since the documents in this case were drafted. Section 9:3110 now reads: "An assignor or assignee of accounts receivable made or perfected prior to [August 30, 1983] may elect to come under the provisions of this Part by filing a notice of assignment." The bankruptcy court found no evidence of such an election and concluded correctly that the documents in this case were to be measured against the statute as it existed prior to the 1983 (and 1984) amendments.
 
 
 5
 The Act provides a relatively simple two-step procedure for assigning accounts.[5] First, the assignor and assignee must evidence the assignment in one of three ways: (1) by noting the assignment on the ledger sheets of the assignor; (2) by a separate agreement signed by the assignor; or (3) by programming the assignor's computer to note the assignment on the computer printout sheets.[6] Second, the assignee must file a statement of assignment, signed by both parties, in the conveyance records of the parish in which the assignor is domiciled.[7] As one scholar has characterized the process: "The formal requisites of the assignment are minimal and flexible."[8]
 
 III.
 
 6
 Energy and M Credit chose to evidence their assignment by executing a separate agreement--the Loan and Security Agreement. The validity of the agreement is tested by its compliance with the 1980 version of Sec. 9:3105, which provided:
 
 
 7
 The assignment or general assignment of accounts receivable ... may be evidenced by any of the ... methods [described supra ] which in substance discloses the fact of such assignment or general assignment of accounts receivable, the date thereof and the name of the assignee....
 
 
 8
 Paragraph 2.1 of the M Credit/Energy agreement states: "Borrower hereby grants to Lender a security interest in and to all of Borrower's ... existing and future accounts." (Emphasis supplied.) The bankruptcy court recognized that the Loan and Security Agreement purported to pledge all of Energy's accounts receivable, but concluded that the agreement did not comply with Sec. 9:3105 because the language of assignment did not fit the definition of a "general assignment" as provided in the Act.
 
 
 9
 A general assignment is defined in Sec. 9:3101(7) as an assignment of all of an assignor's existing or future accounts receivable "arising out of specified operations conducted by the assignor at a place of business."[9] The bankruptcy court concluded that an assignor who desires to evidence a general assignment by means of a separate agreement as permitted by Sec. 9:3105 must use language that conforms to that definition. The court held that the language used in the M Credit/Energy agreement was deficient in two respects: it failed to specify from which of Energy's "operations" the accounts were to be assigned and it did not list the correct "place of business."We disagree with the bankruptcy court's conclusion that the assignor and assignee must recite, in the document evidencing the assignment, the "specified operations" of the assignor from which accounts were to be assigned. Section 9:3101 is merely definitional. It is Sec. 9:3105 that governs the form of the agreement. That section makes no such requirement. More importantly, it states that the agreement must only disclose in substance "the fact of such assignment or general assignment." Louisiana courts have held that no special form or words are necessary to constitute a valid assignment.[10] An agreement that fails to specify from which of the assignor's operations the accounts are to be assigned may create the factual question whether a specific or general assignment is intended, but the omission does not invalidate the assignment. We hold that the language in the Loan and Security Agreement complied in substance with Sec. 9:3105, creating a valid general assignment.
 
 
 10
 Because we have concluded that the definition of "general assignment" found in Sec. 9:3101(7) of the Act is not engrafted into the requirements of a valid agreement under Sec. 9:3105, we find that such a document need not specify the assignor's proper place of business because Sec. 9:3105 itself does not command it. Therefore, we need not address the bankruptcy court's second conclusion that the agreement did not list Energy's place of business as required by Sec. 9:3101(7).
 
 IV.
 
 11
 The bankruptcy court concluded that both the Statement of Assignment recorded by M Credit in East Baton Rouge Parish, and the one recorded in St. Landry Parish, were fatally defective. The court was clearly correct with respect to the statement filed in St. Landry Parish. Section 9:3103 requires a statement to be recorded in the parish of the assignor's domicile. The bankruptcy court found, and all the parties agree, that Energy is domiciled in East Baton Rouge Parish. Thus, the statement filed in St. Landry Parish clearly did not comply with Sec. 9:3103.
 
 
 12
 In addition to directing that the statement be filed in the parish of the assignor's domicile, Sec. 9:3103 requires that a statement contain the following three items:
 
 
 13
 (1) the address of the principal place of business of the assignee, (2) the address of the place or places of business or occupation of the assignor, and (3) a statement that the assignor has assigned or will assign accounts receivable, or that the assignor has made or will make a general assignment of all of its accounts receivable or all accounts receivable concerning a specified debtor. For this purpose forms of statement substantially as follows will suffice....[11]
 
 
 14
 The bankruptcy court found that the statement that M Credit filed in East Baton Rouge Parish did not satisfy requirement (2) or (3) of 9:3103: it did not specify the nature of the assignment (whether general or specific) (requirement (3)),[12] and it did not list Energy's correct place of business (requirement (2)).[13]
 
 
 15
 The statement filed in East Baton Rouge Parish declares that "Energy Contractors, Inc. has assigned and intends to continue to assign accounts receivable to Mercantile Texas Credit Corporation." The parties' choice of language mirrors the suggested form in the pre-1980 version of Sec. 9:3103. The 1980 version of that statute, however, offers alternative forms for the statement of assignment. One alternative is that substantially followed by M Credit and Energy; the second reads "________ has made or will make a general assignment of accounts receivable."[14] The bankruptcy court reasoned that these alternative forms were suggested so that an assignor and assignee might comply with requirement (3) of Sec. 9:3103. That requirement provides that a statement of assignment shall announce "that the assignor has assigned or will assign accounts receivable; or that the assignor has made or will make a general assignment of all of its accounts receivable...." The court concluded that a statement of assignment must specify, by one of the forms suggested, whether the assignor meant to make either a specific or a general assignment. The court decided that the language used in the M Credit/Energy statement was that of a specific assignment, whereas a general assignment was intended. This error, the court concluded, coupled with the fact that the statement listed an incorrect business address of Energy (discussed infra ), rendered the statement inadequate.
 
 
 16
 The court found that the statement of assignment in this case substantially followed the language of one alternative offered by the 1980 version of Sec. 9:3103. Nevertheless, the court found the statement deficient, reasoning that it was unlikely that a third party reading the M Credit/Energy statement would conclude that a general assignment had been made. Section 9:3103, however, was not designed to apprise third parties of the exact nature of the assignor's assignment, but merely to alert them to the fact that an assignment of some kind had been made. If so alerted, third parties could request to see the security agreement to ascertain the nature of the assignment. As the Louisiana Supreme Court has held: "The purpose of requiring recordation of the statement of assignment is to provide notice that accounts receivable have been or will be assigned."[15] A statement in the form used in this case satisfies that objective. Moreover, Sec. 9:3103 requires only that the form of statement used be "substantially" as stated in the statute. We find that it was.
 
 
 17
 Section 9:3103 also requires that a statement of assignment list the assignor's place of business. The bankruptcy court found that the statement in this case did not list Energy's proper place of business. "Place of business" is defined by the Act as:
 
 
 18
 [T]he location in the state of the particular establishment of the assignor at or from which accounts receivable are either contracted with debtors or recorded on account records of the assignor, or at which it is contemplated that such accounts will be contracted or recorded.[16]
 
 
 19
 The address shown on the M Credit/Energy statement was 4939 Jamestown Ave., Suite 203, Baton Rouge, East Baton Rouge Parish, Louisiana. The court found that this was Energy's registered office, but held that Energy's place of business within the meaning of Sec. 9:3101(6) was 137 Eastpark, Eunice, St. Landry Parish, Louisiana. M Credit contends that this finding was unsupported by any evidence introduced at the hearing and is, therefore, clearly erroneous within the meaning of Federal Rule of Civil Procedure 52(a). We agree.
 
 
 20
 Both the Loan and Security Agreement, executed in August 1981, and the Statement of Assignment, executed in March 1983, listed Energy's place of business as the Baton Rouge address. No party to the hearing ever put the location of Energy's place of business at issue. The bankruptcy court, however, concluded that Energy's "principal place of business and the place from which business operations were conducted was in Eunice, Louisiana. While there appears to be little dispute between the parties with respect to this issue, it is also supported by the evidence."[17]
 
 
 21
 We have thoroughly reviewed the record and have found no evidence to support the conclusion that Energy's place of business was in Eunice, Louisiana, at the time the Statement of Assignment was executed and recorded. There was evidence that by the summer of 1983 Energy's place of business was in Eunice: the Statement of Assignment filed in August 1983 in St. Landry Parish listed Eunice as Energy's place of business; the Loan and Security Agreement was amended in September 1983 to list Eunice as Energy's principal place of business; and the invoices representing Energy's uncollected accounts receivable list Eunice as Energy's place of business. The earliest of these invoices, however, is dated July 1983. In sum, there is no evidence in the record that, at the time the M Credit/Energy Statement of Assignment was executed and recorded in East Baton Rouge Parish, Energy's place of business was other than Jamestown Avenue in Baton Rouge.
 
 V.
 
 22
 The Loan and Security Agreement as well as the Statement of Assignment executed by M Credit and Energy substantially complied with the 1980 version of the Louisiana Assignment of Accounts Receivable Act. We uphold the validity of M Credit's security interest in Energy's accounts receivable. The decision of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 La.Rev.Stat.Ann. Secs. 9:3101-3111 (West Supp.1986)
 
 
 [2]
 11 U.S.C. Secs. 1101 et seq
 
 
 [3]
 Id. at 362
 
 
 [4]
 In re Energy Contractors, Inc., 45 B.R. 181 (Bankr M.D.La.1984)
 
 
 [5]
 La.Rev.Stat.Ann. Sec. 9:3102 A (West 1983)
 
 
 [6]
 Id. at Sec. 9:3105
 
 
 [7]
 Id. at Sec. 9:3103
 
 
 [8]
 Nathan, Introduction to Posel, Factoring Accounts Receivable in France: Some Legal Aspects and American Comparisons, 57 Tul.L.Rev. 282, 290 (1982)
 
 
 [9]
 La.Rev.Stat.Ann. Sec. 9:3101(7)(a) (West 1983)
 
 
 [10]
 See Rolf v. Lewis, 165 So.2d 12, 14 (La.App. 2d Cir.1964)
 
 
 [11]
 La.Rev.Stat.Ann. Sec. 9:3103 (West 1983)
 
 
 [12]
 In re Energy Contractors, Inc., 45 B.R. at 186
 
 
 [13]
 Id. at 185
 
 
 [14]
 La.Rev.Stat.Ann. Sec. 9:3103 (West 1983)
 
 
 [15]
 Agrico Chemical Co. v. E.K. Painting, 432 So.2d 253, 255 (La.1983)
 
 
 [16]
 La.Rev.Stat.Ann. Sec. 9:3101(6) (West 1983)
 
 
 [17]
 In re Energy Contractors, Inc., 45 B.R. at 183